FIRST DIVISION

February 26, 2001
 

No. 1-99-3883

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

) 

)

DONNA KOLZOW, ) 

) Honorable

Defendant-Appellant. ) Eugene E. Campion,

) Judge Presiding.

JUSTICE O’MARA FROSSARD delivered the opinion of the court:

Following a bench trial defendant was convicted of involuntary manslaughter for the death of her three-month-old son, who died of heat stroke after she left him unattended in a car for several hours.  She was sentenced to three years' probation, with the conditions of counseling and six months in Cook County jail.  Defendant began serving her six-month jail term.  After serving four months of her six month sentence
 defendant sought early release from jail based on her good behavior pursuant to section 3 of the County Jail Good Behavior Allowance Act (Allowance Act) (730 ILCS 130/3
 (West 1998)).  Cook County jail officials denied defendant's request because her crime involved the infliction of physical harm upon another person, which rendered her ineligible for "good time" credit under the Allowance Act.  See 730 ILCS 130/3 (West 1998).  Defendant argued to the trial judge that the Allowance Act was unconstitutional.  The trial judge denied defendant's motion to find the Allowance Act unconstitutional, but granted an "I bond" pending this appeal.

Defendant contends that the Allowance Act punishes offenders who are confined in

county jail more severely than those who are confined in the penitentiary violating due process of law under article I, section 2, of the Illinois Constitution, which provides: "No person shall be deprived of life, liberty or property without due process of law."  Ill. Const. 1970, art. I, §2.  We

note that statutes are presumed constitutional.  
People v. Fuller
, 187 Ill. 2d 1, 10 (1999).  A party

challenging a statute's validity has the burden of clearly establishing the statute's alleged constitutional infirmities.  
People v. Shephard
, 152 Ill. 2d 489, 499 (1992).  It is a court's duty to construe a statute so as to affirm the statute's constitutionality and validity, if reasonably possible.  Further, if the statute's construction is doubtful, a court will resolve the doubt in favor of the statute's validity.  
People v. Hamm
, 149 Ill. 2d 201, 208-09 (1992).  However, it is equally our duty to declare invalid an unconstitutional statute.  
People v. P.H.
, 145 Ill. 2d 209, 221 (1991).  A  challenge to a statute's constitutionality is a question of law; therefore, our review is 
de novo
.  
People v. Jung
, 192 Ill. 2d 1, 4 (2000).

The two groups of persons with whom we are concerned in this case are: (1) felons

convicted of offenses involving physical harm who are sentenced to a term of confinement in the county jail as a condition of probation; and (2) felons convicted of offenses involving physical harm who are sentenced to a term of confinement in the penitentiary.  For example, two felons convicted of involuntary manslaughter can potentially 
receive sentences that contain different good-behavior credit.  The felon sentenced to county jail as a condition of probation cannot be sentenced for more than six months confinement, cannot statutorily serve that sentence in the penitentiary, and "shall not be committed to the Department of Corrections."  730 ILCS 5/5-6-3(e) (West 1998).  When serving this sentence in a county jail, the Allowance Act prohibits credit for good behavior because the felon inflicted physical harm upon another.  730 ILCS 130/3 (West

1998).  The felon who is not sentenced to probation, but instead is serving a term of imprisonment

in the penitentiary is eligible for good-time credit pursuant to section 3-6-3 of the Unified Code of Corrections.  (730 ILCS 5/3-6-3(a)(2.1) (West 1996)).

We turn first to a review of the two statutory schemes implicated in this case that defendant complains deprived her of due process of  law.  Section 3 of the Allowance Act applies to persons sentenced to serve a fixed term in county jail and provides in relevant part:

"The good behavior of any person who commences a sentence of confinement in a county jail for a fixed term of imprisonment after January 1, 1987 shall entitle such person to a good behavior allowance, except that: (1) a person who inflicted physical harm upon another person in committing the offense for which he is confined shall receive no good behavior allowance ***."  730 ILCS 130/3 (West 1998).

Defendant's offense occurred before June 19, 1998, and both parties agree that, under prior section 3-6-3 of the Unified Code of Corrections (730 ILCS 5/3-6-3 (West 1996)), defendant would be eligible for day-for-day good-conduct credit if committed to the Department of Corrections.
 

"The Department of Corrections shall prescribe rules and regulations for the early release on account of good conduct of persons committed to the Department which shall be subject to review by the Prisoner Review Board.  

***

  

(2.1) For all offenses, other than those enumerated in subdivision (a)(2) committed on or after the effective date of this amendatory Act of 1995, the rules and regulations shall provide that a prisoner who is serving a term of imprisonment shall receive one day of good conduct credit for each day of his or her sentence of imprisonment or recommitment under Section 3-3-9.  Each day of good conduct credit shall reduce by one day the prisoner's period of imprisonment or recommitment under Section 3-3-9."  730 ILCS 5/3-6-3(a)(2.1) (West 1996).

   

As applied in the present situation, while defendant's conviction for involuntary manslaughter disqualified her from receiving good-behavior allowance credit for time she served in the county jail, she would have been eligible for day-for-day good-conduct credit had she been sentenced to a term of confinement in the penitentiary.

The legislature has wide discretion in prescribing penalties for defined criminal offenses. 
People v. Mathey
, 99 Ill. 2d 292, 298 (1983).  This exercise of the State's police power, however, is subject to the constitutional requirement that a person may not be deprived of liberty without due process of law.  The standard for determining whether substantive due process requirements have been met is to examine "'whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare.'"  
People v. Reed
, 148 Ill. 2d 1, 11 (1992), quoting 
People v. Bradley
, 79 Ill. 2d 410, 417 (1980).  
Applying the rational basis test, legislation attacked on due process grounds will be upheld if that legislation is rationally related to a legitimate legislative purpose and is not arbitrary.  
Reed
 148 Ill. 2d at 11; see also 
Fuller
, 187 Ill. 2d at 15-16. 

Under the rational basis test, courts should abstain from judging whether legislation is wise or appropriate because these issues are within the province of the legislature.  
People ex rel. Lumpkin v. Cassidy
, 184 Ill. 2d 117, 124 (1998).  It is the duty of the legislature, and not the courts, to balance the advantages and disadvantages of legislation.  
People v. Warren
, 173 Ill. 2d 348, 355 (1996).  Therefore, if the court finds a legitimate reason which supports a rational basis for legislation, the court must uphold the law. 
 People ex rel. Lumpkin
, 184 Ill. 2d at 124.

Section 3 of the Allowance Act has been found to satisfy the rational basis test. In 
People v. Gaither
, 221 Ill. App. 3d 629 (1991), defendant was convicted of misdemeanor battery for inflicting physical harm on a child and sentenced to 364 days in the county jail.  As in this case, the defendant in 
Gaither
 was not entitled to a good-behavior allowance because the offense involved physical harm.  Defendant claimed a denial of due process because if he had been convicted of the felony, aggravated battery to a child, and sentenced to the penitentiary, he would have been eligible for day-for-day good-time credit.  The court compared the Allowance Act to section 3-6-3 of the Unified Code of Corrections.  The court noted that although section 3-6-3 did not prohibit good-time credit for felons serving a sentence in the penitentiary, it did cap good-time credit for meritorious service to 90 days for felons who harm children.  
Gaither
, 221 Ill. App. 3d at 640.  The court indicated, "We believe that the General Assembly's decision to disallow good-time credit for those convicted of acts involving physical harm to all persons, including children, is in response to the increase in violent crimes, especially abuse directed toward children."  
Gaither
, 221 Ill. App. 3d at 640-41.  The court concluded that because section 3 of the Allowance Act is reasonably designed to remedy this evil it did not violate due process under article I, section 2 of the Illinois Constitution.  
Gaither
, 221 Ill. App. 3d at 641.

Similarly, in 
People v. Burton
, 100 Ill. App. 3d 1021, 1024-25 (1981), the court found the different application of good-time 
credit to felons and misdemeanants was rationally related to a legitimate state purpose.  The court reasoned that the legislature instituted good-time credit programs to improve prison discipline and that, because felons have been proven guilty of more serious offenses, "it was quite reasonable for the legislature to think that felons need greater incentives than do misdemeanants to conform their behavior to prison rules." 
 Burton
,
 100 Ill. App. 3d at 1025. 

In determining whether the Allowance Act is reasonably designed to remedy the evils that the legislature has determined to be a threat to the public health, safety and general welfare, we look to our constitution and the Unified Code of Corrections to identify the goals of the legislature in defining crimes and their penalties.
  The purposes of the Unified Code of Corrections are set forth in section 1-1-2 of the Code: 

"(a) prescribe sanctions proportionate to the seriousness of the offenses and permit the recognition of differences in rehabilitation possibilities among individual offenders; 

(b) forbid and prevent the commission of offenses; 

(c) prevent arbitrary or oppressive treatment of persons adjudicated offenders or delinquents; and 

(d) restore offenders to useful citizenship."  730 ILCS 5/1-1-2 (West 1998).

Article 1, section 11, of our constitution requires "the legislature, in defining crimes and their penalties, to consider the constitutional goals of restoring an offender to useful citizenship and of providing a penalty according to the seriousness of the offense."  
People v. Taylor
, 102 Ill. 2d 201, 206 (1984).  We believe the Allowance Act is reasonably designed to accomplish these purposes and goals.

The good-time credit provisions of the Allowance Act and the Unified Code of Corrections take into consideration the differences in rehabilitative possibilities among various offenders.  Felons placed on probation with the first six months to be served in county jail are regarded by the sentencing judge as less serious offenders than those felons sentenced to the penitentiary with no probation.  As indicated by the court in 
Burton
, "felons [sentenced to the penitentiary] are in greater need of rehabilitation and need a greater incentive, in the form of good time credits, to get them to conform their behavior to what society will accept."  
Burton
, 100 Ill. App. 3d at 1023.  The good-time credit programs are designed to promote prison discipline; therefore, it is reasonable that persons who are subjected to a penitentiary sentence may need more incentives to conform their behavior to prison rules.  
Burton
, 100 Ill. App. 3d at 1024 (holding that, under good-time credit rules, it was constitutional for a felon sentenced to one year in the Illinois Department of Corrections to be released before a misdemeanant sentenced to six months in a county jail).  We conclude the legislature's decision to allow felons sentenced to the penitentiary for crimes involving physical harm to be eligible for good-time credit, while denying such credit to felons serving a sentence in county jail as a condition of probation for crimes involving physical harm, is rationally related to the legitimate goals of improving prison discipline and giving felons in the penitentiary incentives to conform their behavior to prison rules.

The Allowance Act promotes the restoration of felons to useful citizenship.  A sentence of probation with the first six months in county jail encourages a felon to develop behavior habits that promote restoring the felon to useful citizenship after the confinement ends and the probation continues.  In cases where felons have been convicted of offenses involving physical harm, we conclude the legislature's decision to deny credit to felons serving their sentence in county jail as a condition of probation, is rationally related to a legitimate legislative purpose of restoring felons to useful citizenship.

Moreover, we believe the Allowance Act is reasonably designed to allow judges to impose penalties according to the seriousness of the offense consistent with our constitution and the Unified Code of Corrections. 
 The treatment at issue in the context of good-behavior credit is based on the type of penalty imposed.  It is the type of sentence the felon receives that determines eligibility for good-time credit.  
The sentence is imposed based on a variety of circumstances which differ from case to case.  We note that under section 5-6-1(a) the judge in sentencing is required to consider "the nature and circumstances of the offense, and *** the history, character and condition of the offender"  730 ILCS 5/5-6-1(a) (West 1998).  The trial judge imposes a sentence based on the totality of circumstances of each case, giving due consideration to such factors as the "defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." 
 People v. Fern
, 189 Ill. 2d 48, 53 (1999).  The trial judge is in the best position to weigh these factors and has considerable discretion in imposing a sentence because the judge has personally observed the proceedings and the defendant. 
 Fern
, 189 Ill. 2d at 53.
  Therefore, although two felons may have committed what is labeled as the "same crime," the facts and circumstances surrounding their felonious conduct may warrant different sentences.  Whether a felon serves the sentence in county jail or the penitentiary will depend on the type of sentence imposed.
  Whether a felon is eligible for good-time credit will also depend on the type of sentence imposed.  The judge when imposing a sentence is of course presumed to know the law, including the law regarding eligibility for good-time credit.    

Regarding eligibility for good-time credit, we believe that the legislature may distinguish between felons convicted of offenses involving physical harm, sentenced to jail as a condition of probation and those felons convicted of offenses involving physical harm who receive a sentence of imprisonment to be served in the penitentiary.  Probation is an affirmative correctional tool offering the maximum benefit to both the public and the defendant.  
People v. McClendon
, 130 Ill. App. 2d 852 (1970).  A sentence of probation is not appropriate in every case.  
People v. Dale
, 69 Ill. App. 3d 772 (1979).  Rather, probation is a privilege and not a right; a privilege employed when a defendant's presence in society would not be threatening and defendant's rehabilitation would be enhanced. 
 People v. Neckopulos
, 284 Ill. App. 3d 660 (1996).  After admission to probation the defendant is under supervision of the court.  
People v. Terven
, 130 Ill. App. 2d 708 (1970).  Probation is a less severe sentence that allows for rehabilitation outside prison.  
People v. Dowiels
, 3 Ill. App. 3d 813 (1972).  Therefore, a felon sentenced to a term of confinement with a condition of probation is different from a felon sentenced to imprisonment.  A felon sentenced to probation with a period of confinement in the county jail is viewed by the sentencing judge as a person who would benefit from a short period of jail time together with a period of probation, unlike the felon sentenced to the penitentiary, whom the judge has determined is not eligible for probation. 

Defendant argues that it violates due process to treat felons differently merely based on the type of institution in which they are housed.  This argument fails to recognize that here the defendant was not treated differently based on the type of institution where she was confined; rather, defendant was sentenced to probation with the first six months in county jail as the result of  a variety of factors properly considered by the sentencing judge.  Defendant ignores the fact  that the legislature may differentiate between felons convicted of the "same crime."  The range of penalties available to the trial judge in imposing a sentence confirms the fact that the law recognizes that felons convicted of the same crime should be sentenced based on the circumstances of the crime and their background.  

In this case that range included a sentence of probation up to a sentence of five years in the penitentiary.  The defendant was convicted of involuntary manslaughter under section 9-3(d)(1) of the Criminal Code (720 ILCS 5/9-3(d)(1) (West 1992)), which at that time was a Class 3 felony.  The defendant could have been sentenced to probation or to probation with a maximum of six months in jail or to a term of imprisonment from two to five years in the penitentiary.  We note parenthetically that subsection (d) of section 9-3 has been amended to increase the penalty for involuntary manslaughter in which the victim was a family or household member from a Class 3 felony to a Class 2 felony, for which a person, if sentenced to a term of imprisonment, shall be sentenced to a term of not less than three and not more than fourteen years.  720 ILCS 5/9-3(f) (West 1998).

We note that defendant's term of confinement was not an independent sentence but, rather, a condition of her felony probation.  The judge concluded that the sentence imposed was appropriate given circumstances in aggravation and mitigation.  In sentencing defendant, the trial judge addressed specific factors in aggravation and mitigation in detail.  The judge specifically mentioned that the sentence in this particular case served both as a punishment and an "attempt at rehabilitation."  
People v. Kolzow
, 301 Ill. App. 3d 1, 8 (1998).  The court further considered the quality and nature of the offense and made references to defendant's character, including her remorse for the crime.  Defendant's sentence simultaneously served as a form of punishment and as a method of rehabilitating the defendant based on the nature of the offense committed, as well as the background of the defendant.  See 
In re G.B.
,
 
88 Ill. 2d 36, 44 (1981).  Therefore, it is the specific sentence that defendant received based on the totality of the particular facts and circumstances of her case that determined the amount of good-time credit that would be available to her. 
  

We therefore reject defendant's argument that the treatment of defendant in this case was based on the type of institution in which her sentence was to be served.  Instead, defendant's sentence and the denial of good-behavior credit was based on the type of crime defendant committed, defendant's background and the totality of circumstances that the trial judge relied on to determine an appropriate sentence.  The trial judge, after careful consideration of the circumstances of the crime and the defendant's background, decided that a sentence of three years' probation with the condition that the first six months of probation be served in the county jail was appropriate for the crime of involuntary manslaughter.  Based on the totality of circumstances, the trial court was satisfied that reasonable grounds existed demonstrating that defendant could be rehabilitated and that the interests of justice and society could be served by such sentence.
  In defendant's direct appeal, this court found that "the record reflects that the judge balanced the factors in aggravation and mitigation, wrestled with the tragic facts of this case and crafted an appropriate sentence to punish as well as rehabilitate."  
Kolzow
, 301 Ill. App. 3d at 9. 

Substantive due process requirements have been met by the Allowance Act because the statute is reasonably designed to remedy the evils that the legislature has determined to be a threat to the public health, safety and general welfare.  The Act is rationally related to legitimate State goals including rehabilitation, punishment and protecting society.  The Act is a rational response to the problem of violent crime, in this case violent crime against a child, and is reasonably designed to remedy that evil. 

Defendant was properly found ineligible for early release under the County Jail Good Behavior Allowance Act because she was sentenced to six months in jail as a condition of three years probation for recklessly causing the death of her three-month-old son, a crime that involved physical harm to another.  Defendant did not sustain her burden to demonstrate that the

disallowance of good-time credits for her crime which involved physical harm to another violated due process under the Illinois Constitution.  For the reasons previously discussed, we find the Allowance Act comports with substantive due process.  

In conclusion, the denial of the good-behavior allowance to defendant pursuant to the County Jail Good Behavior Allowance Act does not deprive defendant of due process of the law.  Accordingly, defendant's motion for early release was properly denied.  Defendant should resume serving her sentence. 

Affirmed.

McNULTY, P.J., and TULLY, J., concur.